IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., as successor-by-merger to LaSalle Bank National Association, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) ) ) | 11 C 7658 |
| LARRY M. GOULD, individually, DOUGLAS STUDT AS TRUSTEE FOR THE LARRY M. GOULD IRREVOCABLE TRUST DATED MAY 20, 1994, LARRY M. GOULD AS TRUSTEE FOR THE JACK M. GOULD EXEMPT TAXABLE MARITAL TRUST, LARRY M. GOULD AS TRUSTEE FOR THE JACK M. GOULD NON-EXEMPT TAXABLE MARITAL TRUST, LARRY M. GOULD AS TRUSTEE FOR THE JACK M. GOULD RESIDUARY TRUST, STEPHEN H. SILVERSTEIN, individually, STEPHEN H,. SILVERSTEIN AS TRUSTEE FOR THE STEPHEN H. SILVERSTEIN TRUST DATED DECEMBER 5, 1981 and SILVERSTEIN FAMILY ENTERPRISES LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Virginia M. Kendall |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Bank of America, N.A., as successor-by-merger to LaSalle Bank National Association, filed suit against Larry M. Gould and Stephen H. Silverstein, individually and as the sole trustee for the Stephen H. Silverstein trust, alleging breach of duty for failure to pay a guaranteed loan. Bank of America claims that LaSalle Bank entered into a loan

1

agreement with Illinois limited liability company Morgan Property II wherein guaranty of payment was executed by the Defendants in favor of LaSalle Bank. Bank of America maintains that default has occurred, and that both Gould and Silverstein have failed to perform their duties under their signed guarantees. Now, approximately four months before discovery in this case is scheduled to close, Bank of America seeks leave of the Court to add five new parties to its Complaint as well as two new additional claims for relief under the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), 740 ILCS 160/1, *et seq*. For the reasons set forth below, the Plaintiff's Motion to File a First Amended Complaint is granted.

## I. Background

Both versions of the Plaintiff's Complaint allege that Gould and Silverstein breached their duty to pay under their signed guarantees. Bank of America filed its Motion for Leave to File its First Amended Complaint on May 1, 2012. Bank of America seeks to add the following parties as related to Defendant Gould: Douglas Studt as Trustee for the Larry M. Gould Irrevocable Trust, Larry M. Gould as Co-Trustee for the Jack M. Gould Exempt Taxable Marital Trust, Larry M. Gould as Co-Trustee for the Jack M. Gould Non-Exempt Taxable Marital Trust, and Larry M. Gould as Co-Trustee for the Jack M. Gould Residuary Trust. Bank of America alleges that on May 24, 2006, in addition to his individual guaranty that is already part of this action, Gould, as Co-Trustee of the Gould Exempt Marital Trust,

2

the Gould Non-Exempt Marital Trust, and the Gould Residuary Trust, executed a Guaranty of Payment for the Loan in favor of LaSalle Bank. Bank of America alleges that in the Studt-Gould Irrevocable Trust Guaranty and the Gould Trusts Guaranties, Studt and Gould unconditionally, irrevocably and jointly and severally guaranteed payment of all amounts due and owing by Morgan Property II under the Note. Bank of America avers that Studt, as Trustee of the Gould Irrevocable Trust, and Gould, as Co-Trustee of the Gould Trusts, each executed a Reaffirmation and Waiver in favor of LaSalle Bank, wherein Studt and Gould agreed that the Studt-Gould Irrevocable Trust Guaranty and Gould Trusts Guaranties are valid and binding obligations of Studt and Gould and waived and relinquished any claims that they might have against LaSalle Bank from the beginning of time through the date of the Reaffirmation with respect to the Loan documents.

Bank of America claims that Studt and Gould jointly and severally guaranteed payment of all amounts due to LaSalle Bank and are therefore jointly and severally liable for Morgan Property II's entire indebtedness under the subject loan agreement. To date, Morgan Property II has not paid the indebtedness. Bank of America claims that Studt and Gould have refused and neglected to pay the amounts due. As such, Bank of America seeks leave to file an amended complaint adding Studt, as Trustee of the Gould Irrevocable Trust, and Gould, as Co-Trustee of the Gould Trusts as additional defendants in this matter.

3

Bank of America also seeks to add fraud claims against Silverstein and Silverstein Family Enterprises LLC. Bank of America alleges that at the time Silverstein executed the Silverstein Guaranty LaSalle Bank understood, based on financial information provided by Silverstein, that his financial condition would allow him to honor his obligations under the Silverstein Guarantee if Morgan Property II failed to honor its obligations under the loan agreement. At the time Morgan Property II allegedly defaulted on the loan agreement, LaSalle Bank generally understood that Silverstein's financial conditions would allow him to satisfy Morgan Property II's indebtedness pursuant to the terms of the Silverstein Guarantee. At the time Bank of America filed is Complaint in this action it understood, based on financial statements provided by Silverstein and his obligations undertaken in the Silverstein Guarantee, that his financial condition still would enable him to honor his obligations under the Silverstein Guarantee. Bank of America learned that Silverstein's financial condition had substantially changed to such a point that his ability to honor those obligations under the Silverstein Guarantee was severely compromised, if not eliminated entirely. The full extent of the circumstances surrounding the substantial change in Silverstein's financial condition remains unknown. Nevertheless, Bank of America believes that the change is a result of a transfer of the majority of Silverstein's assets (more than $9 million), including assets held by the Silverstein Trust, without adequate consideration, to the Silverstein Family Enterprises LLC, of which Silverstein is

4

a member. Based on the amount of the transfer, as well as the nature and timing of the transfer, Bank of America alleges that Silverstein fraudulently transferred funds to Silverstein Family Enterprises LLC in violation of the IUFTA. Therefore, Bank of America seeks leave to file an amended complaint asserting a claim under the IUFTA against both Silverstein and Silverstein Family Enterprises LLC.

In response to Bank of America's allegations contained in its original Complaint filed in this matter, Silverstein generally asserted as affirmative defenses to Bank of America's claims that LaSalle committed fraud in the inducement in causing him to enter into the Silverstein Guaranty as a result of representations by LaSalle Bank that the Studt-Gould Guaranty and the Gould Trusts Guaranties are enforceable even though LaSalle Bank was aware that the Guaranties were "defective in terms of their enforceability," and that LaSalle Bank failed to mitigate damages. In response to Bank of America's allegations contained in its original Complaint filed in this matter, Gould generally asserted as affirmative defenses to Bank of America's allegations that LaSalle Bank failed to perform various duties under the terms of the agreement, failed to mitigate damages, and that Bank of America's claims against him in his individual capacity are somehow barred because LaSalle Bank knew that the Studt-Gould Guaranty and the Gould Trusts Guaranties are unenforceable and invalid, but failed to release the Studt-Gould Guaranty and the Gould Trusts Guaranties from any obligations with respect to the Morgan Property II Loan.

## II. The Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure requires Bank of America to obtain leave of this Court in order to amend its complaint at this point in the proceedings. *See* Fed. R. Civ. P. 15(a)(2) (a party may amend its complaint once as a matter of course under 15(a)(1) within 21 days after serving it; otherwise "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."). Although Rule 15(a)(2) provides that leave to amend should be freely given when justice so requires, leave to amend is not automatic. *See Crest Hill Land Dev. LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005) (noting that although the Rule permitting leave to amend is very liberal in nature, "leave to amend is not automatically granted"). Leave to amend may be denied when the party moving for leave has unduly delayed amending the pleadings, the amendment would cause undue prejudice to the nonmoving party, or where the amendment would be futile. *See Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). Although delay by itself is not sufficient to deny leave to amend, "the longer the delay, the greater the presumption against granting leave to amend." *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994) (internal citation omitted). Courts have suggested that motions to amend that are filed after the close of discovery in a case should be denied in order to avoid undue prejudice and delay. *See Sanders v. Venture Stores*, Inc., 56 F.3d 771, 774 (7th Cir. 1995). However, the decision

6

to grant a motion to amend a complaint lies within the sound discretion of the district court, and its decision will not be disturbed absent an abuse of that discretion. *See Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 625 (7th Cir. 1987). While a court may deny a motion for leave to file an amended complaint, such denials are generally disfavored, especially when it is a party's first amendment. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (in the absence of undue delay, a party's first motion to amend should be freely granted).

### III. Discussion

Bank of America contends that activity by Silverstein after the Complaint was first filed requires the addition of a new claim under the IUFTA against Silverstein and the addition of Silverstein Family Enterprises LLC as a party. Bank of America also contends that four additional Gould parties need to be added to adequately provide a remedy, as these parties allegedly jointly and severally guaranteed payment of all amounts due to LaSalle Bank under the term of the loan agreement. Bank of America claims that the Gould parties were not originally included in its Complaint because at the time the Complaint was filed the Defendants disputed the validity of the Studt-Gould Guarantee and the Gould Trusts Guaranties. The Plaintiff has consistently maintained that these guaranties are valid and enforceable contracts guaranteeing Morgan Property II's payment obligations to LaSalle Bank. However, because the guarantors for the Morgan Property II Loan are

7

jointly and severally liable, and to avoid unnecessary and protracted litigation over the enforceability of the Studt-Gould Guarantee and the Gould Trusts Guaranties, Bank of America filed its Complaint as against Gould pursuant to the Guarantee of Payment that he executed in his individual capacity and as against Silverstein pursuant to the Guarantee of Payment that he entered in his individual capacity and as Trustee of the Stephen H. Silverstein Trust. In their answers to Bank of America's Complaint, the Defendants raised the enforceability of the Studt-Gould Guaranty and the Gould Trusts Guaranties as affirmative defenses to Bank of America's breach of guaranty claims related to the Gould Individual Guaranty and the Silverstein Guaranty. Therefore, Bank of America asserts, issues related to the claims raised in its proposed First Amended Complaint regarding the Studt-Gould Guaranty and the Gould Trusts Guaranties are already before the Court and will likely be adjudicated as part of the proceedings in this suit. Additionally, the Defendants have already issued written discovery related to the validity and enforceability of the Guaranties. As such, Bank of America claims that amending the Complaint to add the additional Gould parties will not significantly delay the case, and will not unduly prejudice the Defendants. Bank of America further claims that Silverstein's transfer of a majority of his assets to the Silverstein Family Enterprises is simply an attempt to avoid his payment obligations to the Plaintiff, despite the pending litigation. As such, Bank of America argues that justice requires that it be given leave to amend its Complaint to add

8

Silverstein Family Enterprises as a defendant in the present suit, and to assert IUFTA claims against Silverstein and Silverstein Family Enterprises for making an allegedly fraudulent transfer of assets within the meaning of the Act. The Defendants contend that Bank of America's Motion for Leave to File its First Amended Complaint should be denied on the basis that it is made in bad faith, it was unduly delayed, it will cause further delay in the proceedings, and it will place an undue discovery burden on them.

First, Silverstein claims that Bank of America's new claims are made in bad faith and founded in evidence taken from settlement negotiations and are thus in violation of Federal Rule of Evidence 408. Silverstein asserts that the evidence of his transfer of assets came to the attention of Bank of America as a result of a letter written during the course of settlement negotiations before the magistrate judge. He thus asserts that use of this evidence is a violation of Rule 408, and that the disclosure is protected by the rule because it was made as part of settlement negotiations. Contrary to Silverstein's suggestion, the Court finds that no violation of Rule 408 or bad faith bars evidence from being admitted to support Bank of America's IUFTA claims in the proposed amended complaint. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005) (admission of evidence obtained from a settlement hearing distinct from a new claim does not undermine the policy behind Rule 408 of the Federal Rules of Evidence). Rule 408 of the Federal Rules of Evidence provides that "[c]onduct or statements made in compromise negotiations

9

regarding the claim" is a "prohibited use" and is not admissible. *See* Fed. R. Evid. 408(a)(2). Rule 408 does not apply when compromise evidence is offered for a purpose other than to prove the validity, invalidity or amount of a disputed claim. *See* Fed. R. Evid. 408. The court in *Zurich* distinguished using evidence from negotiation meetings for claims that are distinct from the original claim for which settlement negotiations occurred, stating that the law allows for the permissible use of settlement communications as evidence when "the settlement communication at issue arise out of a dispute that is distinct from the one for which the evidence is being offered." *See Zurich*, 417 F.3d at 689-690. Here, Bank of America does not seek to use Silverstein's disclosure of his transfer of assets to prove Silverstein's liability for or the validity of Bank of America's breach of guarantee claim against Silversetin. Instead, Bank of America seeks to use this information to assert new fraud claims against Silverstein and Silverstein Family Enterprises. When Silverstein made his disclosure about the transfer of assets, the only claims before the Court were the breach of guarantee claims against the various parties. Silverstein's allegedly fraudulent conduct and Bank of America's IUFTA claims were not in dispute when the disclosure took place. Bank of America's claims under the IUTFA against Silverstein and Silverstein Family Enterprises are distinct from its breach of guarantee claim against Silverstein. Bank of America's breach of guarantee claim against Silverstein arise out of his alleged failure to honor his payment obligations under the Silverstein Guarantee. On the other hand, Bank

10

of America's IUTFA claims arise our of Silverstein's transfer of assets to Silverstein Family Enterprises, which allegedly occurred after Bank of America filed its Complaint in this suit. Thus, under *Zurich*, the information obtained in the settlement negotiations between Bank of America and Silverstein relating to Silverstein's transfer of assets is allowable because the evidence relates to a claim distinct from the claim for which settlement negotiations were conducted. *See Zurich*, 417 F.3d at 689-690 (citing approvingly *Broadcort Capital Corp. v. Summa Med. Corp*, 972 F.2d 1183, 1194 (10th Cir. 1992) ("Rule 408 does not bar this evidence because it related to settlement discussions that involved a different claim than the one at issue in the current trial"); *Vulcan Hart Corp. v. NLRB*, 718 F.2d 269, 277 (8th Cir. 1983) ("Rule 408 excludes evidence of settlement offers only if such evidence is offered to prove liability for or invalidity of the claim under negotiation.")).

Furthermore, the information disclosed by Silverstein during the settlement negotiations is not being offered by Bank of America for the purpose of proving liability under the Act. The information will be of little value to Bank of America in proving Silverstein's liability for fraud, and to those ends Bank of America has propounded written discovery on Silverstein for that purpose, especially because the necessary facts are not included in the disclosure letter and remain unknown to Bank of America. Rather, Bank of America is relying on the disclosed information for the limited purpose of satisfying its pleading obligations under Federal Rule of Civil Procedure 9(b). That Rule elevates the

pleading requirements for allegations of fraud above those found in Rule 8, and requires that the plaintiff pleads fraud "with particularity." Fed. R. Civ. P. 9(b). A plaintiff satisfies the "particularity" requirement of Rule 9(b) with allegations based "upon information and belief" that the facts constituting fraud are not accessible to the plaintiff and the plaintiff provides "the grounds for his suspicion." *Perelli Armstrong Tire Corp. v. Retiree Med. Benefits Trust*, 631 F.3d 436, 442-443 (7th Cir. 2011); *see also Uni Quality Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992). In considering whether evidence should be excluded under Rule 408 of the Federal Rules of Evidence, courts must also contemplate the spirit and purpose of the Rule and decide whether the need for the evidence obtained in settlement negotiations outweighs the potentially chilling effect on future settlement discussions. *See Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 484 (7th Cir. 2000). While the Rule prohibits a party from using evidence gained in settlement negotiations in the original claim, it does not bar its use in distinct or new claims. *See Zurich*, 417 F.3d at 689. Here, Bank of America is not using the information disclosed by Silverstein regarding his recent transfer of assets to establish liability for or to prove an element of its breach of guarantee claims; rather Bank of America is using the evidence to assert a new fraud claim and to satisfy the pleading requirements where the facts are not otherwise accessible to it. The Court finds that the use of this evidence does not violate Rule 408 and that its value outweighs the possible chilling effect it may have on future settlement negotiations. *See Id*.

Silverstein also contends that the new claims and party additions are premature in that they are only relevant if Bank of America is successful on its guaranty claim. While it is true that the newly amended complaint will only be relevant if Bank of America obtains judgment against Silverstein, his suggestion that Bank of America should bring its IUFTA claims in separate litigation after the enforceability of the Silverstein Guarantee is resolved overlooks both the possibility that Silverstein's affirmative defenses will fail, and that there is a strong presumption in favor of judicial efficiency. *See Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001) (district court should consider interest of judicial efficiency and saving resources in exercise of its jurisdiction). In a judicial system that is already exceptionally strained, it is unnecessary and wasteful to request that the Court expend its resources on claims that can easily be tried together in the present case as a single cause of action. *See, e.g., Garot Anderson Mktg., Inc. v. Blue Cross & Blue Shield United of Wisconsin*, 772 F. Supp. 1054, 1063 (N.D. Ill. 1990) (a plaintiff can amend a complaint to avoid the risk of duplicative lawsuits).

Finally, Silverstein argues that allowing the amended complaint would create undue delay in a case that has already had its close of fact discovery extended once before. Additionally, Silverstein contends that Bank of America likely had plans to make amendments to the Complaint during the pendency of the Defendants' previous motion to extend the discovery schedule and at the time of the negotiations concerning the

stipulation to extend the time to respond and object to pending discovery requests, thus misleading the Court. The Court finds that discovery will not be significantly delayed if the amendment is allowed. In addition to Bank of America's willingness to move discovery along, the Court finds these facts to be persuasive enough to compel a finding that this amendment is not being made with the intention to delay nor will it cause significant postponement. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend shall be freely given absent undue delay, bad faith, failure to cure deficiencies in previous amendments, dilatory motive, futility of amendment, and prejudice).

It may be true that the amended complaint will require more discovery, but as Bank of America points out, some discovery regarding the new parties and claims has already been conducted, and the rest may still be completed before the close of discovery which this Court will extend another 60 days to November 5, 2012. *See Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1225 (7th Cir. 1988) (some delay of trial is a natural consequence of allowing new claims to be brought). While the addition of the Silverstein defendant and the new IUFTA claims may end up delaying discovery slightly, the Court finds that the interests of justice and efficiency outweigh this small delay. *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004). Silverstein has not shown significant delay in making the amendment or undue prejudice that would concern this Court enough to deny Bank of America's Motion to Amend. *See Foman*, 371 U.S. at 182.

14

Gould likewise fails to show significant delay in Bank of America's proposed amendment or undue prejudice that would cause the Court to deny Bank of America's Motion. *See Id*. Gould asserts that Bank of America knew about the four additional Gould parties as far back as 2006, and that it has no explanation for its delay in adding them to this action. Additionally, he asserts that there have been no changed circumstances to validate the addition of these new parties. Finally, he expresses the same concern that Silverstein has for Bank of America's lack of openness in discovery deliberations, and he claims that the withholding of this information places a significant burden on the Defendants to conduct more costly discovery searches.

Although it may be questionable why Bank of America held back from amending its complaint during discovery discussions and instead waited to add the new Gould defendants that the evidence suggests Bank of America likely knew about previously, the law holds that leave to amend shall be freely given where justice so requires except where undue delay or prejudice is shown. *See* Fed. R. Civ. Pro. 15(a)(2); *see also Foman*, 371 U.S. at 182; *Airborne Beepers*, 499 F.3d at 666. Despite waiting, Bank of America's request to amend is still within the boundaries set by Rule 15(a)(2) and the Defendants have failed to show the kind of delay or prejudice that is required to deny a request to amend. *Cf. Bethany Pharmacal Co., v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001) (denying motion to amend in part for delay, as request was made after close of discovery); *Perrian v. O'Grady*,

958 F.2d 192, 194 (7th Cir. 1992) (denying motion to amend because request was made after close of discovery and on the eve of trial). When Bank of America originally filed its Motion to Amend, the close of discovery in this case was still four months away. While some of that time has been lost in battling the instant Motion, the Court finds that it was filed with enough time before the close of discovery to avoid causing undue delay. *Cf. Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 353 (7th Cir. 1982) (denying motion to amend because request was made after close of discovery and near commencement of trial).

The Defendants have not shown that the proposed amendment is made to create undue delay, will cause significant delay, or will be prejudicial to them. Bank of America's timely request to amend, combined with an overarching need for efficiency and a reduction in litigation expenses outweighs the slight delay this case may see as a result of the Complaint being amended.

## IV. Conclusion

For the foregoing reasons, the Court grants Bank of America's Motion to Amend its Complaint. The Amended Complaint shall be filed by August 7, 2012. Discovery is extended to November 5, 2012.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 31, 2012